Mr. Franco came to this country when he was about 8 or 9 years old. He came from El Salvador, Central America. He began to live an American dream and he began to live an American nightmare. He became a gang member and he has his tattoos to prove it. Despite the fact that this is a very unsavory character whom I represented to you before, the legal issues that I presented to you, I believe, would require a remand for this case to the TSA. This is a case, Your Honor, that involves two conflicting reporters dealing with country conditions in El Salvador having to do with violence against gang members. Could you get to the point and say what examples do you have that show him that he would be tortured if he were returned? Yes, Your Honor, I'd be very happy to do it. On behalf of Mr. Franco, Mr. Franco introduced to the DIA a section of a report that I would refer to as the Harvard Study. Alright, but what in the Harvard Report indicates he would be tortured? AR Administrative Record at page 68 says here, there was overwhelming agreement among those interviewed for this report that having one or more tattoos renders an individual suspicious in the eyes of the police and of society at large. But that demonstrates that they'll be detained and perhaps imprisoned, but how does it demonstrate that they'd be tortured? Right. And the following page of this report, at page 69, it says that police Just to ask, are these parts that were in, that were submitted or not submitted? These parts were not submitted to the IJ. Okay. And that is the legal issue that is before you. This particular relevant documentary, this was not presented to the IJ at all. So the IJ never considered it. But your brief does not appear to challenge the BIA's conclusion that Mr. Franco does not face a clear probability of torture if he's removed to El Salvador. You know, you don't raise that in your brief. That is correct, Your Honor. So The IJ stated he had considered all of the evidence in the record. All right. And he didn't specifically mention the Harvard report, but he said he had considered all of the evidence, and the Harvard report was one. And what you said is there was conflicting evidence. Why isn't, aren't you just asking us to re-weigh the evidence? What I'm asking you is for a remand, for a new opportunity for Mr. Franco to have the case re-evaluated based on the weight of the evidence. You are raising only an IAC claim, right? I'm sorry, Your Honor? You're raising only an IAC claim. The due process claim. The due process claim based on ineffective assistance, basically. Right. The report, the report that the IJ never considered, that was presented to the BIA on a claim of ineffective assistance to counsel that was plain on the record. Escobar-Grijalva is the case in point. Plain on the record because it was clear that there was only part of the document. And you're also claiming that they didn't consider even the part of the document they had. That is correct. You started to answer my question by going through the report, and you got to page 69. What was on page 69 that surely might be tortured? Page 69 of the Harvard report that the IJ never considered says that the police rarely, if ever, provide protection to presumed or former gang members facing any threats. By contrast, the police... Is that evidence that they will be tortured? That is material and relevant evidence for a likelihood of future torture because... The police don't protect people in prison. That's what that says? No. No, Your Honor. That's not what I'm saying. What I'm saying is that this particular objective evidence is evidence that supports the claim of Mr. Franco that he faces a likelihood of future persecution because we relied on the... It's torture, not persecution. You're right. Right. And let me clarify something here. The Convention Against Torture is not only about torture. Specifically, the definition under 8 U.S.C. 1231 says that it's not only about torture, but it's also about protection against cruel, inhuman, or degrading treatment or punishment. The BIA made a mistake when it only referred to the Harvard study and said, this is only about... This doesn't prove torture. But what about cruel and inhuman treatment, degrading treatment, or punishment? The BIA didn't address that. That's why a remand is the right thing to do in this case. As under Camaltas v. INS, a case I cited to Your Honors, 251 F-1279, which is a case that the government never addressed and is basically a point that should be conceded on behalf of Mr. Franco, country conditions, Your Honors, alone can play a decisive role in granting relief under the convention. And I think it's important to remember, when an I.J. is missing a big chunk of relevant evidence that was never used, never applied, because it was not before the I.J., then that particular relevant evidence should be considered in the first instance by the I.J. That is the... But it would be helpful to me, as to Judge Noonan, if you could tell us what in the Harvard report... I mean, it seems plain that they didn't get part of it and they didn't consider, or at least arguably didn't consider any of it. But what in the report would support not that people were treated badly and not that they were persecuted, but that they were tortured? This is... Or if they were tattooed gang members. That's page 69. Okay. Could you... 69 of the record or 69 of the report? 69 of the administrative record. That's the part that includes the reports that the I.J. never considered because he was absent. Because they're targeted killings? Is that why? Right. It basically says, this PNC officer I thought to be complicit in the targeted killings and abuse of numerous members of this population. And these members of the population have to do with gang members who have tattoos. And it goes on. In this manner, tattooed youth and other individuals presumed to be affiliated with gangs, a class of individuals already targeted for severe human rights violations, cannot depend on the government of El Salvador for protection against such violations. It says they're targeted for assassination by death squads. That is also a reference. Not only that, but intentional beatings, the use of intentional and arbitrary massive arrests of suspected gang members, the use of a militarized crackdown of suspected gang members. All of those, all of that evidence, which was that the I.J. never considered, is relevant to... Are those gang members there or are those people that are people, does the Harvard report refer to people that are gang members there or people that are being returned by the United States there? The Harvard report talks about both groups of people, just gang members in general. And what distinguishes the Harvard study is that it is precise to sources, to citations, to organizations in El Salvador that have studied the issue of violence against gang members in El Salvador. Now the BIA looked at this, right, and said it wouldn't have changed anything and it was also that it was available at the time, right? That's correct. That's an error because the BIA basically said that this report was not new evidence. That is an error because this particular section of the Harvard study was never before the I.J. So when it gets presented to the BIA, it is new evidence that is being presented because previous counsel never submitted it. That's not the standard for new evidence. The standard... Doesn't new evidence have to be something that wasn't readily available at the time? I mean from a legal standpoint. Yes. New evidence isn't just what now I get a redo. You're correct, Your Honor. All right. You said that the presentation of this Harvard report was presented with a claim of ineffective assistance of counsel that was plain on the record. So but for the failure of previous counsel to submit this report, the I.J. never considered this particular reporter or this particular section of the report. The I.J. never addressed specifically the sections of the Harvard study. In fact, the I.J. said we rely on the Department of State. I guess the question is why does it matter, assuming all of that, that when the BIA did look at the complete report, did it not, and say that it would not have made a difference? Is it because of the relative role of the I.J. and the BIA? Is that why? Right. The BIA is supposed to be an appellate body. What is presented is evidence that the I.J. did not address the evidence that contradicted the statement of the report. So it's your argument that the BIA ended up making a finding that it wasn't entitled  Is that your problem? That's one of our arguments. That is a due process violation, and that's why the case should be remanded to the BIA. That is your argument. Well, it's not so much a due process violation as a violation of the regulations that say that the I.J. is not supposed to be making factual findings. That is correct. Not a factual finding, the novel. On evidence that was never presented to the I.J. in the first place. And we believe that under Comalthus, the INS, the country conditions can play a decisive role, but the issue facing this Court is what about a situation in which a report Mr. Quintanilla, I would like to return to page 69. Yes. Yes, ma'am. The last paragraph, the excerpt that follows, provides a more detailed picture of the pervasive human rights violence facing Salvadoran youth. And it goes on. Yes, Your Honor. In particular, these narratives illustrate four main problems facing the population. The first is police harassment and violence. Yes, Your Honor. Two, killings by rival gang members. Three, extrajudicial execution by death squads. Four, discrimination in areas such as employment. Now, where is torture or even cruel and degrading punishment mentioned? We believe when it refers to police harassment and violence. No, no. Harassment is not torture. It is torture. Violence, I don't know. Police violence is, Your Honor. Well, for example, one of the narratives says every time the police saw me, they were taking me into custody and beat me. They detained me maybe 10 or 11 times. Is that torture if they take them into custody and beat them? The beating, yes. Beating an individual is an instance of torture. What about taking them into the car and shooting them? That is also an example of torture. Well, the problem is to quantify it. How do we know how often that happens? I believe that the report does address that. It addresses situations that, for example ---- Well, now, wait a minute. These are reports of what happened in 2005. That is correct. It's not the present. Not the present time, Your Honor. However ---- No, but we're trying to decide what would happen today if they went back. That is correct. And what would happen today is based on two reports that are basically a day and night as to what the objective evidence they are presenting. For example, at page 71 of the Harvard study, it says that this organization called FESPA identifies 622 cases of possible extrajudicial killings during a certain period of time in El Salvador. Killings and not torture. Well, it's an ultimate example of torture, Your Honor. I disagree with you. What? What is an example? I'm sorry, Your Honor? What are you saying was an example of torture? That the ultimate example of torture is the assassination of a person, the killing of a person. No. No. You're quite wrong. I disagree, Your Honor. Your Honor, let me quote from Camalta's B.I.N.S. 251 F. 1279-1282. Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third-party person information or confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, where such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in any official capacity. Where's Mr. Franco now? Mr. Franco right now is not under custody. He's out of the United States. The last time I know, he was in El Salvador. Okay. However, that particular fact doesn't apply according to jurisdiction. I understand. Okay. Thank you. Can I ask you to finish? Tell you you are finished. I am done, Your Honor. Thank you. Thank you very much. Thank you. And happy holidays. Thank you, Your Honor. Thank you. I have this document. Just give me one moment. Okay. May it please the Court, Nicholas Harling for the respondent, Attorney General Holder. Substantial evidence supports the Board's denial of cat protection and the Board acted within its discretion when it denied the motion for remand based on ineffective assistance of counsel. In adjudicating the cat claim, the Board looked at the evidence of record and ultimately determined that the State Department's issue profile, which was prepared by the Department of State to assist in adjudicating these types of claims, was more persuasive. More persuasive than what? It was more persuasive than the other evidence of record, Your Honor. But not the Harvard report? Yes, of the submitted portion of the Harvard report. It seems pretty plain that the IJA didn't do that for two reasons. First, he said he was not going to consider it because they hadn't mentioned it specifically. And second of all, when he compared, he said the State Department report is more persuasive than the particular individualized evidence. He never mentioned the Harvard report. Well, Your Honor, two points on that. First, the government contends that this court has never required that the immigration judge or the Board present an exegesis of all the materials that were considered. Second, your point is taken when the immigration judge states the three pieces of evidence. I believe he states testimony, he states NGO reports and media documents, and the State Department report, but then finds that the State Department is more persuasive. But in doing so, the immigration judge is not stating that that is all he considered in this case. Now, with reference to the profile that the immigration judge and the Board did find more persuasive, it takes care of all Mr. Franco's ---- Just a minute. The Aguilar-Ramos case from this year, which was very similar, in which the BIA failed to mention the country report. The government argued that he's not required to cite and refute every piece of evidence. But with regard to CAC claims in particular, the regulations implementing CAC explicitly require the IJ to consider all evidence relevant to the possibility of future torture. So there's a ---- essentially saying there's a more exacting standard in this context. Your Honor, that case is distinguishable from the facts of Franco's case. In that case, the admitted evidence, or I should say the evidence that was not explicitly stated that it was considered, was the country report. And in reading that case, Judge Pregerson, I believe, wrote that case. He's very concerned with how important the country report is in adjudicating these claims. And the fact that it was not specifically mentioned as the basis of the immigration judge's decision is really the basis of that decision holding. In this case, the country report, as well as the issue profile, were specifically mentioned. It's just the Harvard report that is not explicitly referenced. Did the court say it considered all the evidence? As Your Honor alluded to earlier, it did say that it considered all the evidence. All right. So then we have the additional problem that they only had half of the report. Apparently, as far as one could tell, there was no reason anybody would have done that except by error. That issue was considered by the BIA, the IAC issue. Yes. And under the wrong standard, right? Because they're relying on the matter of Campion, which has been vacated. Correct. In the second Campion decision, the Attorney General was stating that for the time being, the court should revert back to the previous Lozada standards. Your brief tries to argue that the BIA didn't rely on the wrong standard, but it clearly did, because it says that the failure to include the entire report does not constitute egregious conduct and then incites Campion. So it was applying an egregious conduct standard. I'm not sure I understood. Could you repeat that one more time, Your Honor? Was the board relying on an erroneous standard, the Campion standard? At the time, I — at the time the board decided, I'm not sure that Campion had been overturned. So what? It's erroneous now. Right. But if we look at Campion 2 and we then adjudicate it under the former standards of Lozada, the ultimate decision of the board still is correct. But presumably what we would do then is just remand, say you applied an out-of-date standard, you should apply the right standard. I disagree with that, Your Honor. I think that in this case — You always want us to remand to the board rather than deciding things ourselves. Well, I think that — Not you personally, but the government. Perhaps not me personally. But I believe in this case in particular the evidence is overwhelming that the ultimate decision was correct. But we can't do that, can we? I mean, that really is a problem, isn't it, for us to say that there's no reason to remand for the board to decide something in the first instance because we can tell how it has to come out. That's exactly what we've been excoriated for several different times. Your Honor, I still do not agree because I'm sorry that I did not think of this issue in preparing for my oral argument that perhaps the board had adjudicated it under the wrong standard. I believe that under — because it's under the Lozada standards that it's still sufficient and that the board at the time applied it correctly. And as the law stands now, reverting back to Lozada, it is still correctly decided. Well, that would be true as to that issue, but that has to do with whether there really was obvious ineffectiveness. And unless somebody can think of any reason why anybody would possibly submit half of a report and leave out all the good stuff other than having made a mistake, it would seem like there's obvious ineffectiveness. Well, Your Honor, first of all, it's never been established that it was intentionally omitted. But even assuming — It probably wasn't. That's the whole problem. Well, even assuming that it was intentionally or based on — you know, even assuming that, regardless, if what you said, leaving out the good stuff, however, the board looked at the omitted portion and decided that — That's the next issue. I was simply trying — I understand that that's the ultimate question, but I'm simply trying to isolate that that is the ultimate question, in that the Lozada determination and the egregious conduct determinations can't suffice. So we — it has to be on the prejudice issue if it survives. Correct, Your Honor.  And what the board said, the board looked at the omitted portion. And if you look at page 60 of the record of that omitted portion, in the first paragraph, second sentence, it says, These testimonies are not intended to provide a complete picture of the situation of human rights. But isn't that also the wrong standard? Because — or did they all — not what you're saying, but what they wrote. They said, Nor are we able to find that submission of the entire report would make it more likely than not. In other words, they're going to the merits. And I thought that when there's an ineffective assistance issue, you don't go to the merits. You go to see whether there's some likelihood that you could prevail, particularly because the board's not supposed to be finding facts anyway. So the real question is, should they have sent this back to the BIA to redo with the entire Harvard report? And I don't see how — Sent back to the IJ? The IJ. And I don't see how their determination now as to what the Harvard report would have demonstrated is sufficient to do that. Well, the statement about the more likely than not, that really goes to the board's statement that there is no prejudice from the omission in that portion. I thought that's where we got ourselves. They have to look at their prejudice prong, right? Correct. They look to see if there was prejudice, and there wasn't. And so the board says, look, even in a sense, even if it's sent back, then there's basically no harm because there's no prejudice in this case. But they did that by deciding the issue themselves on the merits. But this — Rather than making a determination as to whether there is some likelihood that somebody could find something based on this. Your Honor, are you alluding to the Petitioner's argument that the board made an incorrect factual determination in the matter of that? Sort of, but more in the context of what is standard of IAC prejudice. The government contends that the board did not err in making that determination because specifically, contrary to what the Petitioner argues, that the board made an improper factual adjudication on that. In my brief on page 22, footnote 3, I point out that although the regulation states that the immigration court — I'm sorry. Although the regulation states that the board is precluding from engaging in the initial adjudication of documentation that was complete before the immigration court and which was never considered in the first instance, in this case, the board did not engage in the de novo review of findings of fact because those facts were not before the IJ. Exactly. So the standard with regard to whether there was prejudice for ineffective assistance is whether it was — the performance was so inadequate that it may have affected the outcome. The board didn't decide that, whether somebody might have thought it may have affected the outcome. What it decided was that in its view, the report would not make it more likely than not that the respondent — in other words, it decided the merits of the question of whether the Harvard report made it — showed that it was more likely than not. And I'm — as I understand it, under the IAC standard, that is not what it was supposed to be doing, not under the standard of de novo review of facts. Well, the government disagrees. And basic — and in a sense — I'm sure it does. But why? In a sense, what it is saying is that the — it was making the legal determination regarding prejudice. And the board is allowed to do that. But did it do it on the right standard of prejudice? Yes. What is the standard of the prejudice that applies? That the — Not the one I just read you, i.e., whether it was — whether it may have made a difference, essentially. Whether it may have affected the outcome. So I thought — is that not the standard? I'm just reading from Ray v. Gonzales. I don't have it before you, Your Honor. He did not show that he would win or lose on any claims. Is that not right? Could you repeat it one more time, Your Honor? All right. The case law that I have says that prejudice is found when the performance of counsel was so inadequate that it may have affected the outcome. The petitioner, quote, need not show that he would win or lose on any claims. Wasn't the BIA determining that in its view it would lose, rather than sending it back to the BIA to look at the whole record with the piece that was left out because of ineffective assistance? I'm not sure that the board specifically stated the review that it was reviewing it under. Well, we are not able to find that the submission of the entire report would make it more likely than not. That's what they said. Thus, prejudice is absent. Your Honor, I'm not sure that I can add anything to that question except to say that the government will stick with its position in the brief, that the board did decide to do that. Well, the reason I had a problem with the brief is because you sort of departed from the wrong place, which was you said that there wasn't a Campion problem, and it appears to me that there really is a Campion problem, and you basically agreed to that. Mr. Howing, I'd like to say I think you've made a decent presentation for the government, but I never understand why the government's unwilling to concede when it's faced with a difficulty. You don't always have to be up there as a good soldier saying I'm going to fight, use my gun to the last. You may be wrong, and you can concede it. You're not disgraced. But anyway, I'd like to say to you, and I suppose to other people on these torture cases, the basic problem is the CAT claims have been tossed in to a lot of cases just as extras, but in these tattoo cases, the CAT claims are fairly serious, and I'm afraid the board got used to brushing off CAT as nothing because it often was nothing, but you get into this type of case, it's fairly serious, and a better job has to be done than they've done. Well, that's the situation as I see it, and I've seen a lot of these immigration cases. Well, I think we're all speaking for ourselves, and no one's speaking for me. All right. But thank you very much, and I want to say that both you and your predecessor on behalf of the government have done a really nice job compared to some of the government arguments I've seen. So thank you. Thank you, Your Honor. I don't know if you have time left. I can't. No, he went over six minutes. All right. Well, then I think we will finish. Thank you very much. Thank you for your arguments, which were quite helpful in Frankel v. Holder, and we will submit that case and go to the next one, which is Cordova-Manzaneres v. Holder. Thank you.
judges: Noonan, Berzon, Callahan